# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | | |
|---|---|---|
| **SHANE A. NEELY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-05-107 |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM & ORDER

Pending before the Court are Plaintiff Shane A. Neely's ("Neely") Motion for Summary Judgment (Dkt. #17) and Defendant, Jo Anne B. Barnhart, the Commissioner of the Social Security Administration's ("Commissioner") Motion for Summary Judgment (Dkt. #11). After consideration of the motions, the entire record, and the applicable law, the Court is of the opinion that Neely's motion should be DENIED and the Commissioner's motion should be GRANTED.

## Factual and Procedural Background

Neely filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner denying Neely's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income payments ("SSI"). Neely was born on November 20, 1959. At the time of his hearing before the Administrative Law Judge ("ALJ"), Neely was 44 years of age with a tenth grade education.[1] Neely had been employed as a truck driver, furniture delivery driver, laborer, heavy equipment driver and road construction worker.[2]

---

[1] Administrative Transcript ("Tr."), pp. 356-57.

[2] Tr., p. 23.

Neely filed his application for DIB and SSI on August 10, 2001, alleging that he had been unable to work since December 1, 2001.[3] The claim was denied initially and on reconsideration, and a request for hearing was timely filed. Neely briefly appeared and testified before the ALJ on June 11, 2003.[4] On November 20, 2003, Neely appeared for and testified at a full hearing before the ALJ.[5] Donna O. Johnson, M.Ed., ("VE") appeared and testified in the capacity of an impartial vocational expert.

On April 1, 2004 the ALJ issued a decision denying entitlement to the benefits sought on the grounds that Neely retained residual functional capacity ("RFC") to perform work that exists in a significant number in the national economy.[6] Neely timely requested review by the Appeals Council. On August 19, 2005, the Appeals Council denied Neely's request for review on the grounds that there was no reason to conclude that the ALJ abused his discretion, there was an error of law, the decision was not supported by substantial evidence, there is a broad policy or procedural issue that might affect the public interest, or there is new material evidence that is contrary to the weight of evidence previously of record.[7]

## Standard of Review and Applicable Law

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2)

---

[3] Tr., pp. 324-26.

[4] Tr., pp. 346-50.

[5] Tr., pp. 351-82.

[6] Tr, p. 26.

[7] Tr., p. 4.

whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n. 2 (5th Cir. 1999)).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135. In applying this standard, the court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. *Brown*, 192 F.3d at 496. Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court reviews the legal standards applied by the Commissioner de novo.

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the

Commissioner should evaluate disability claims according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;
>
> (2) a claimant will not be found to be disabled unless he has a "severe impairment;"
>
> (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;
>
> (4) a claimant who is capable of performing work he has done in the past must be found "not disabled;" and
>
> (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520(b)-(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that he is unable to engage in substantial gainful activity within the meaning of the Act. *See Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). The claimant must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work, but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980) (quoting *Rhynes v. Califano*, 586 F.2d 388, 389-90 (5th Cir. 1978)). However, if the claimant can show that he can no longer perform his previous job, the burden then shifts to the Commissioner to show that

there exists some other form of substantial gainful employment that the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980); *Johnson*, 612 F.2d at 997. By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). The analysis stops at any point in the five step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

## Discussion

In the unfavorable decision, the ALJ proceeded to follow the five step process outlined in the regulations. At the first step, the ALJ found that Neely had not engaged in substantial gainful activity since December, 2001. At step two, the ALJ determined that Neely had impairments (i.e., Hepatitis C and depression) that constitute severe impairments significantly limiting mental or physical ability to do basic work activities. At the third step, the ALJ determined that Neely's severe impairments do not meet or medically equal one of the listed impairments in C.F.R. Pt. 404, Subpart P, Regulation No. 4. At step four, the ALJ determined that Neely's past relevant work is not within the purview of his current residual functional capacity. At step five, the ALJ determined that Neely is capable of performing work that exists in substantial numbers in the national economy.[8]

Neely objects to the ALJ's findings on the grounds that (1) the ALJ failed to give adequate weight to the opinion of the treating physician that Plaintiff is disabled; (2) the ALJ failed to articulate adequate reasons for discrediting the opinion of the treating physician; (3) the

---

[8] Tr., p. 24

ALJ erred in failing to re-contact Plaintiff's treating medical provider as required by 20 C.F.R. § 404.1512(e); (4) while the ALJ acknowledged the evidence of record from Dr. T. Adam Kaspar ("Dr. Kaspar"), he failed to adequately evaluate or explain the weight accorded to this evidence; (5) the ALJ erred in failing to evaluate the claimant's mental impairment and resulting functional limitations as required by 20 C.F.R. § 404.1520(a); (6) the ALJ erred in failing to adequately consider the side effects of Plaintiff's medication and/or treatment. (Dkt. #18 at 2). The Commissioner maintains that the ALJ's decision is supported by substantial evidence and comports with relevant legal standards.

**A.     Failure of the ALJ to Give Adequate Weight to the Treating Physician's Opinion that Plaintiff is Disabled.**

It is undisputed that Dr. Kaspar is Neely's treating physician. Neely maintains that the ALJ, in the unfavorable decision, "did not even refer to Dr. Kaspar's opinions on May 16, 2002 or February 25, 2003, that Plaintiff is permanently disabled. (Tr. 237 and 238)." (Dkt. #18 at 6). Neely also claims that the ALJ did not properly consider Dr. Kaspar's disability opinion rendered in a letter dated May 22, 2003.[9]

Dr. Kaspar's opinion of May 16, 2002 is expressed in what appears to be a standardized form used by Neely to qualify for food stamps.[10] On the form, in a field titled "Diagnosis," "Chronic Hepatitis C" is written by hand.[11] Among several possible selections, a check mark

---

[9] Tr., p. 235.

[10] Tr., p. 238.

[11] Tr., p. 238.

6

indicates that Neely "[c]annot work" because of his mental and physical conditions.[12] In a field titled "Prognosis," the word "fair" is handwritten.[13] Lastly, another box on the form is checked, indicating that the patient will be disabled from work "[p]ermanently."[14] Dr. Kaspar's signature appears below the information described.

Dr. Kaspar's opinion of February 25, 2003 is also expressed in what appears to be a standardized form used by Plaintiff to qualify for food stamps.[15] Several standardized options are selected, indicating that the patient in question "CANNOT WORK" and that disabling factors include "[m]ental" and "[p]hysical."[16] In another field under the title of "[h]ow long will the patient be disabled and unable to work full time," the word "[p]ermanently" is selected by a check mark and the "date of onset" is handwritten as "1999."[17] Dr. Kaspar's signature appears below the information mentioned above.

Dr. Kaspar's opinion of May 22, 2003 appears typewritten in a letter, which in the pertinent part provides:

> Mr. Neely has asked me to write this letter concerning his treatment for chronic Hepatitis C. This patient has evidence of liver damage and other medical problems such as diabetes, high blood pressure and because of his Hepatitis C treatment, his is having malaise, fatigue, insomnia as well as nausea, fevers, vomiting and severe musculoskeletal pain that has made it very difficult for the patient to carry on daily activities. In addition to this, he is suffering from depression causing episodes of emotional instability, mood swings and again,

---

[12] Tr., p. 238.

[13] Tr., p. 238.

[14] Tr., p. 238.

[15] Tr., p. 237.

[16] Tr., p. 237.

[17] Tr., p. 237.

> difficulty in performing daily activities.  The patient has also been advised to avoid sunlight due to its detrimental effect on Hepatitis C treatment.  The patient is usually at his sickest on a day following his injections.  He takes his injections twice a week.
> 
> It is my opinion that Mr. Neely is disabled from any type of work at this time.  However, it is my hope that as his Hepatitis is resolved and his treatment discontinued, he should be able to return to regular activity and hopefully gainful employment at that time.  Lastly, it is important that you know that he has been under my care since 1999.[18]

The letter is addressed "To Whom it may Concern."[19]

It is well established that even though a treating physician's medical opinion diagnosis should be afforded considerable weight, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).  Conclusory findings by a treating physician that a patient is "disabled" or "unable to work" are not to be given any special significance.  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)(1)).  Instead, legal conclusions regarding disability under the Social Security Act are "'reserved to the Commissioner.'" *Id*.

After reviewing the documents referenced by Neely and the information described therein, the Court finds that the ALJ properly declined to consider Dr. Kaspar's disability opinions.  The forms underlying the opinions of May 16, 2002 and February 25, 2003 contain nothing more than conclusory statements that Plaintiff is "disabled" or "unable to work."  These opinions are recorded on standardized forms and are devoid of any analysis.  The forms fail to reference any medical records or notes.  These types of opinions are precisely the kind that the

---

[18] Tr., p. 235.

[19] Tr., p. 235.

Fifth Circuit has prohibited from consideration. Similarly, Dr. Kaspar's May 22, 2003 opinion that Neely is "disabled from any type of work" is also the type of legal finding properly left to the Commissioner.[20] Accordingly, the ALJ did not err by declining to consider Dr. Kaspar's disability opinions.

**B.     Failure of the ALJ to Properly Discredit and Accord Appropriate Weight to the Treating Physician's Opinions and Neely's Subjective Complaints.**

Neely maintains that the opinions of his treating physician, Dr. Kaspar, were not properly weighed or discredited by the ALJ.[21] To support this contention, Neely again directs the Court to the following documents: (1) the two forms used by Neely to qualify for food stamps; and (2) Dr. Kaspar's letter of May 22, 2003. The Court will consider this evidence alongside the entire record to determine if Dr. Kaspar's medical opinions were properly considered and if the ALJ's decision was otherwise supported by substantial evidence.

A treating physician's opinion regarding the nature and severity of a patients condition is normally given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). The ALJ may give less weight to the medical

---

[20] Although Dr. Kaspar's letter also makes findings related to the nature and severity of Neely's medical conditions, these findings are not at issue in section A, but are properly discussed in section B, *infra*.

[21] This section directly addresses the following objections raised by Neely: (1) the ALJ failed to articulate adequate reasons for discrediting the opinion of the treating physician; (2) while the ALJ acknowledged the evidence of record from Dr. Kaspar, he failed to adequately evaluate or explain the weight accorded to this evidence; (3) the ALJ erred in failing to adequately consider the side effects of Plaintiff's medication and/or treatment; and (4) the ALJ erred in failing to evaluate the claimant's mental impairment and resulting functional limitations as required by 20 C.F.R. § 404.1520(a).

opinion of a treating physician when good cause is shown. *Greenspan*, 38 F.3d at 236. Good cause is established when a treating physician's statements are conclusory, unsupported, or otherwise incredible. *Id.* Even though the treating physician's medical opinion diagnosis should be afforded considerable weight, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez*, 64 F.3d at 176 (quoting *Moore*, 919 F.2d at 905). An ALJ should provide "good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). However, an ALJ is not required to follow formalistic rules when articulating the reasons for his credibility determination. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

After reviewing the ALJ's decision, it is clear that the ALJ examined and considered Dr. Kaspar's medical opinions at length. The decision lists extensive factual findings from several of Dr. Kaspar's reports, including reports dated of: (1) September 21, 2000[22]; (2) December 6, 2000[23]; (3) December 11, 2000[24]; (4) February 22, 2001[25]; and (5) March 22, 2001.[26] Dr. Kaspar's letter of May 22, 2003,[27] where Neely's conditions are qualified as serious and debilitating, is also described in the ALJ's decision. Furthermore, the ALJ described and considered the medical opinions of Dr. Johnnie G. Fisher ("Dr. Fisher"), a psychiatrist,[28] the

---

[22] Tr., p. 195.

[23] Tr., p. 189.

[24] Tr., p. 188.

[25] Tr., p. 181.

[26] Tr., p. 180.

[27] Tr., p. 235.

[28] Tr., pp. 143-46.

medical opinions of Dr. Sean G. Connolly ("Dr. Connolly"), a psychologist,[29] and Neely's subjective complaints.[30]

After considering this factual information, the ALJ expressly found that "[t]he record as a whole does not support a conclusion that the claimant is disabled from all work activity."[31] To further reinforce his finding, the ALJ described substantial record evidence supporting his decision. Specifically, the ALJ stated that: (1) on February 22, 2001, Neely reported that he had been compliant with his Rebetron, had been taking Serzone for side effects, and was doing well with the exception of some occasional aching in his legs on the nights of the injection[32]; (2) on March 22, 2001, Dr. Kaspar reported that Neely's depression was under good control with medication[33]; (3) on August 9, 2001, Neely reported his fatigue symptoms had improved and his only complaint was intermittent back pain;[34] (4) on July 11, 2003, Neely was clinically assessed with the Wechsler Adult Intelligence Scale - Third Edition, which showed a valid verbal IQ score of 81, a valid performance IQ score of 81 and a valid full IQ score of 79[35]; (5) on June 25, 2002, diagnostic studies of Neely's spine showed no significant abnormality[36]; (6) on October 7, 2002, a MRI of Neely's left knee showed normal marrow signal, morphology and alignment of

---

[29] Tr., pp. 210-16

[30] Tr., p. 22.

[31] Tr, p. 22.

[32] Tr., p. 181.

[33] Tr., p. 180.

[34] Tr., p. 164.

[35] Tr., p. 212.

[36] Tr., pp. 284-85.

the knee[37]; and (7) a medical report of July 24, 2002, showed Neely to have 20/20 vision despite his claims of blurry vision.[38] The ALJ then proceeded to specify Neely's functional limitations.

The Court finds that the ALJ's description above identifies substantial record evidence that is inconsistent with Dr. Kaspar's opinions regarding the nature and severity of Neely's injuries. Observations (1), (3), (5), (6) and (7) support the finding that Neely's physical condition was not severely impaired by his illnesses. Neely reported that he was doing well with the exception of minor pains and tests on Neely's eyesight, back and knee did not reveal significant injuries. Such findings are inconsistent with Neely's allegations of severe pain and the resulting limitations. Furthermore, observations (2) and (4) support the finding that Neely's mental condition did not preclude him from performing work. Neely's Serzone medication was found to successfully control side effects from his Hepatitis C medication and Neely was found to have valid verbal, performance and full IQ scores. These findings are inconsistent with the alleged nature and severity of Neely's mental condition. The Court therefore finds that the ALJ's observations, when considered alongside the description of Dr. Kaspar's reports, constitute "good reasons" for the weight attributed to Dr. Kaspar's medical opinions.

In the same paragraph where the ALJ found that Neely could perform work, he also found that Neely's subjective complaints of pain were inconsistent with substantial record evidence.[39] The ALJ heard Neely's testimony about the negative side effects of his medications

---

[37] Tr., pp. 274-75.

[38] Tr., p. 239.

[39] The ALJ is required to make affirmative findings regarding a claimant's subjective complaints. *Falco*, 27 at 163 (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981)). When a plaintiff alleges disability resulting from pain, he must establish a medically determinable impairment that is capable of producing disabling pain. *See Ripley v. Chater*, 67 F.3d 552, 556 (5th

at the administrative hearing.[40] In addressing these complaints, the ALJ found the following: "The claimant's testimony was evaluated and compared with prior statements and other evidence. It is the conclusion of the Administrative Law Judge that the Hepatitis C and depression is limiting, but when compared with the total evidence, not severe enough to preclude all types of work."[41]  Indeed, Neely's complaints of debilitating pain are inconsistent with observations (1), (3), (5), (6) and (7). These observations support a finding that Neely's pain was not severe and that his medication was working. Accordingly, the Court finds that the ALJ properly discounted Neely's subjective complaints of pain as inconsistent with other substantial evidence of record.

The ALJ's findings are further supported by additional substantial record evidence. A report of September 9, 2000 indicates that Neely denied any fever, nausea, vomiting, rash or "GI" complaints.[42]  This same report states that Neely's vital signs were stable, he did not appear to be in acute distress, he appeared quite healthy, and that Neely did not have any spider angioma, edema or tenderness of the abdomen.[43]  A report of October 11, 2000 indicates that

---

Cir. 1995). Once a medical impairment is established, the subjective complaints of pain made by a claimant must be considered along with the medical evidence in determining the claimant's work capacity. *See id.* The ALJ is entitled to make credibility findings regarding a claimant's testimony. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The ALJ's credibility findings are entitled to great deference. *Id.* Specific reasons for the weight given to a claimant's credibility must be provided by the ALJ. 20 C.F.R. § 404.1529; Social Security Ruling 96-7p. An ALJ may discount subjective complaints of pain if they are inconsistent with other evidence in the record. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren*, 925 F.2d at 128).

[40] Tr., p. 361-62, 366-71.

[41] Tr., p. 22.

[42] Tr., p. 195.

[43] Tr., p. 195.

Neely denied any abdominal or "GI" related pain or complaints, an examination revealed that Neely's vital signs were stable and there was no tenderness of the abdomen.[44] A report of December 6, 2000 indicates that Neely again denied any fever, pain, or complaints, Neely's vital signs were stable, and an examination did not reveal any rash, edema, ascites or spider angiomas.[45] A report of December 11, 2000 indicates that Neely was very teachable and tolerated his shot without difficulty.[46] Another report, of January 9, 2001, indicates that Neely denied fever, pain, complaints, and stomach upset and there is no icterus, rash, or skin problems.[47] The same report reveals that an abdominal exam was unremarkable. A report of February 22, 2001 indicates that Neely's vital signs were stable, he was afebrile, examination was unremarkable with a benign abdomen with no rebound, guarding, tenderness, ascites or skin lesions.[48] The same report indicates that Neely's Hepatitis C was responding to his medication. A report of March 22, 2001 indicates that Neely's liver function tests showed "marked improvement" and his vital signs were stable, he was afebrile, there was no edemea, there was no jaundice and an examination of the abdomen was unremarkable.[49] A report of May 11, 2001 indicates that Neely's vital signs were stable, he was afebrile, he had no edema, and an examination of the abdomen was unremarkable.[50] The same report indicates that Neely's viral

---

[44] Tr., p. 190.

[45] Tr., p. 189.

[46] Tr., pl 188

[47] Tr., p. 185.

[48] Tr., p. 181.

[49] Tr., p. 180.

[50] Tr., p. 171.

load had improved and that his liver function test was fairly good. A report of June 7, 2001 indicates that any symptoms of fatigue had not worsened, his abdomen was unremarkable and several of his lab tests were stable.[51] Another report, of August 9, 2001, indicates that Neely's fatigue improved, vital signs were stable, he was afebrile, an examination of his back revealed no tenderness or tender or warm areas, his abdomen was unremarkable and his extremities were without edema.[52] The same report indicates that Neely's lab reports had undergone little change. A report of September 13, 2001 indicates that Neely had stable vital signs, was afebrile, had clear lungs, did not have tenderness in the abdomen, and was without edema or rash.[53] A report of November 8, 2001 indicates that Neely had stable vital signs, was afebrile, had no generalized icterus, no ascites, and no joint effusion or lesions on the skin.[54] Yet another report, of December 20, 2001, indicates that Neely denied any pain besides fatigue or malaise, his vital signs were stable, he was afebrile, no ascites were revealed and no skin lesions developed.[55] A report of September 18, 2002 indicates a normal left knee.[56] A report of June 25, 2002 indicates generally no significant abnormality of the spine, but only mild bulging of certain discs.[57]

---

[51] Tr., p. 169.

[52] Tr., p. 164.

[53] Tr., p. 158.

[54] Tr., p. 157.

[55] Tr., p. 154.

[56] Tr., p. 276.

[57] Tr., p. 284.

The ALJ's findings are also supported by the report of Dr. Fisher, dated of March 18, 2002.[58] The report indicates that Neely was cooperative and understood the nature of the interview.[59] Neely's speech showed a dysarthria on challenge, but was otherwise understandable.[60] He made good eye contact, was an adequate historian, and appeared depressed in the normal range.[61] Neely was alert, able to concentrate, able to solve problems and was oriented to time, person and place.[62] His memory function was intact for the short, intermediate and remote terms and was aware of the current president and events.[63] Neely could make change and do arithmetic in his head.[64] He functioned in the low normal to normal range of intelligence, which was consistent with his educational background.[65] No evidence of hallucinations, delusions, or thought broadcasting was evident.[66] Neely had no major perceptual difficulties.[67] Neely's judgment for everyday decisions was intact.[68] Furthermore, Neely took care of his own

---

[58] Tr., p. 143-46.

[59] Tr, p. 144.

[60] Tr, p. 144.

[61] Tr, p. 144.

[62] Tr, p. 144.

[63] Tr, p. 144.

[64] Tr, p. 144.

[65] Tr, p. 144.

[66] Tr., p. 144.

[67] Tr., p. 144.

[68] Tr., p. 144.

grooming without difficulty and could make independent travel plans.[69] Dr. Fisher concluded by stating that none of Neely's mental problems were of a severe nature and that his prognosis was reasonably good.[70]

The ALJ's findings are additionally supported by the report of Dr. Connolly, dated of July 11, 2003.[71] Dr. Connolly's report showed that Neely stated his age, could dress himself and take care of his hygiene.[72] Neely's posture and gait were unremarkable.[73] His manner was polite and friendly, and his level of activity was normal.[74] Neely was moderately engaged in the evaluative process.[75] His responsiveness to questions was moderately fast.[76] Neely was attentive to tasks and there was no evidence of any speech impairment.[77] His ability to interact with supervisors and relate to coworkers was found to be good.[78]

This additional substantial record evidence bolsters the ALJ's finding that Neely is able to perform some work. Neely has repeatedly denied having debilitating pain, although from time to time some non-severe pain is noted. His physical problems were reported to be under control

---

[69] Tr., p. 144.

[70] Tr., p. 145.

[71] Tr., pp. 210-16.

[72] Tr., p. 211.

[73] Tr., p. 211.

[74] Tr., p. 211.

[75] Tr., p. 211.

[76] Tr., p. 211.

[77] Tr., p. 211.

[78] Tr., p. 215.

on several occasions. Furthermore, Neely's mental faculties consistently appear to be coherent, aware, and otherwise functional.[79] He is able to interact with others, retains his memory function, and can perform basic tasks. He also does not exhibit suicidal or homicidal tendencies. The ALJ properly considered this substantial record evidence and made findings regarding the degree of limitation related to each relevant functional area.[80] The ALJ then instructed the VE as to his findings.[81] The VE then described work existing in substantial numbers in the national economy that Neely could perform under the ALJ's limitations.[82] Based on the VE's findings, the ALJ concluded that Neely could perform some work.[83] Accordingly, the Court finds that the ALJ did not err in determining that Neely was not disabled under the Social Security Act.

---

[79] Neely argues that several findings made by Dr. Connolly and Dr. Kaspar remain uncontroverted. Specifically, Neely points to Dr. Connolly's findings that his ability to deal with work stress is poor (Tr., p. 215) and that his ability to demonstrate reliability is poor (Tr., p. 216). Neely also directs the Court to Dr. Kaspar's letter of May 22, 2003 indicating that Neely's medical conditions are severe. The Administrator maintains that these findings are inconsistent with substantial evidence and not entitled to controlling weight.

Despite Neely's assertions, the evidence presented in section B is inconsistent with Dr. Connolly's claims and Dr. Kaspar's claims. Neely is repeatedly found to have proper grooming, to be polite, to be friendly and to function with a basic level of intelligence. Dr. Kaspar's many reports documenting this behavior underscore its consistency. Significantly, no reports indicate that Neely missed appointments, was inattentive, or had continuous problems with stress. Such evidence supports a finding that Neely is not overcome by work stress and that his reliability is not poor. Furthermore, Dr. Fisher's report indicates that any disability would have to be based on Neely's physical condition rather than his mental condition. While this opinion is not entitled controlling weight on the issue of disability under the Act, it sheds light on the severity of Neely's medical conditions. Dr. Fisher's report is therefore consistent with evidence showing that Neely is not overcome by stress and is in fact reliable. Accordingly, the Court finds that the ALJ did not err in discounting the particular findings of Dr. Connolly and Dr. Kaspar mentioned in this footnote.

[80] Tr., pp. 22-23.

[81] Tr., pp. 372-75.

[82] Tr., pp. 374-75.

[83] Tr., pp. 22-26. The VE's findings under the ALJ's limitations are uncontested.

**C.     Failure of the ALJ to Re-Contact Neely's Treating Medical Provider as Required by 20 C.F.R. § 404.1520(a).**

Neely maintains that under 20 C.F.R. §404.1520(a) the ALJ had a duty to re-contact Neely's treating medical provider. Neely cites *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000) for the proposition that if an ALJ expresses doubt about a treating physician's opinions, he needs to "request additional information to eliminate those doubts before rejecting the opinion of the treating physician." *Id.* at 457-58. Such a request in proper only when an applicant demonstrates a questionable gap in the record or prejudice from a failure to request information. *Id.* Medical sources should be re-contacted only when evidence received by the ALJ is inadequate to determine disability status. 20 C.F.R. § 404.1512(e).

It is clear from the record that the ALJ did not have any doubts about the opinions of Neely's treating physician. The ALJ was well aware of Dr. Kaspar's opinions rendered early in the course of Neely's treatment. These opinions were recorded in Dr. Kaspar's many reports, and these reports were cited by the ALJ in his decision. The ALJ was also aware of Dr. Kaspar's medical opinions rendered late into Neely's treatment. The record contains Dr. Kaspar's letter of May 22, 2003, which contained such opinions and was also cited by the ALJ in his decision. The record also contains several of Dr. Kaspar's notes from January 25, 2001 to June 11, 2003.[84] Moreover, Dr. Connolly's report of July 11, 2003 provides ample evidence of Neely's medical condition at a late stage of his treatment.[85]   Because these sources span Neely's course of treatment, there is no lack of evidence that would otherwise cause Neely prejudice.

---

[84] Tr., pp. 218-323.

[85] Tr., pp. 210-16.

Accordingly, the Court finds that the ALJ did not err in not re-contacting Neely's treating medical provider.

## Conclusion

For the foregoing reasons, Neely's Motion for Summary Judgment (Dkt. #17) is **DENIED** and the Commissioner's Motion for Summary Judgment (Dkt. #11) is **GRANTED**. The Court shall enter a final judgment on even date herewith.

It is so ORDERED.

Signed this 27th day of March, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE